Judge Mills
delivered the opinion.
The plaintiff <n t rror exhibited his bill in the court below, shewing that John May, in his life time, having had sundry dealings with Cot Lee, Doctor Skinner, and Gilbert In,¡ay, and (bat May being desirous of making a compromise of these dealings, offered to give said Lee 3000 acres of land, and for that purpose, wrote a letter to 013 brother George May to the following effect :
“ I have proposed to make Col. Lee a present of 3000 acres ol land upon the adjustment of our matters : Therefore wish you to pick out lands to that amount. I would wish them to be good, and that you would choose such as lie conveniently. 1 am not to warrant tbe lands, but will have a deed made with warranty against Will May, the present grantee, as soon as Col. Lee shall order it. t he land is for sale, and therefore the deed need not be made till he sells, unless he chooses it Pray write to him on the subject. Direct to the care of John Hopkins and desire him to give orders about the deed, also to send my bond for !>'e 3i<00 acres of laud, which 1 have bis receipt Tar the discharge of. (feigned) JOHN MAY,” '
A conside-^ocTo^ahr ab!e is^ssen-tialtoihera-liduy of a the^hancel-lor will never decree speci
He charges that <i- urge 'lav seal a copy of the letter to Hopkins endorsed, i bat the origina! would be taken care offor Col. Lee’s benefit, and iba'John Mai died shortly afterwards, and that he (the complainant below) had bought all the interest of Lee. I-rdav and Skinner, t<> lands in Kentucky, a»d receR-d their deed including the fore* going cl ;im. And that after die death of May, the ag- ot oftbe estate acknowledged the justice of the claim and promised to satisfy it. but never did, and that the Steirs of said John May refused to comply with the engagement. H< insists that tne compromise or adjustment o(‘ the claims Or dealings bel w een John May and L"e, was tbe consideration for the writing, and that be had purchased the claim fora valuable considera'ion. He makes tbe heirs and representatives of John May, the agent of the essate, who had acknowledged tbe justice of the claim William May, who held the legal estate of these lands, Henry Lee and George May, defendants; and alledges that part pf the heirs of John May, George May and Lee were non residents of this state, and prays an exhibition of titles for lands, pnd a conveyance to satisfy the claim ora compensation in damages.
The heir- of John May appeared and pleaded the act to prevent frauds and perjuries, and also demurred to the bill. No other defendants appeared, and order of publication was bad against the absentees The court below, on argument, sustained tbe demurrer and dismissed tbe bill ; to reverse whici this writ of error is prosecuted.
We perceive no objection to the decree that a considera-*,on’ e**her good or valuable, is necessary in every contract, which equity will enforce, is a principle too well understood to need the support of authority, and no such consideretion is shewn by tbe letter itself tn tbe present case. Indeed the object of the writing was an intended gratuity The bill alledges that the adjustment of dealings between the parties was the consideration. This admits of answers- The obligations of the bill presents it, in such a shape that the adjustment might have been an inducement to the present, but not a consideration. And the writing itself declares it an intended present, and negatives the idea that there was any other consideration ; and it is not pretended that there was any fraud or mistake in drawing tbe instrument. The demurrer was therefore property sustained as to the heirs of John May.
*437 But it is contended that the court below ought not to have dismissed the bii! as to the other defendants, and that relief might be had against them, As to William Ma- • be holds the legal estate, out of which the present was to be satisfied ; and to reach this estate which it is alledg-ed be was bound to convey to the heirs of John May, was the design in. making him defendant As the plaintiff in error has shewn notitle to relief against t be heirs of John Jwaj, he can have no pretest for relief against William, who holds the legal estate for them, and who is only bound 10 convey it to them or in discharge of valid contracts made by them or their ancestor, the dismission the bill, therefore, as to him. necessarily followed its dis-mission, as to the heirs ot John May.
As to the agent of Ma ’s estate, who acknowledged th$ justice of the demand. 1* cannot be pretended that these acknowledgments bound him individually, and they could only operate upOB the estate ot John May, and for dismissing the bill, as to him, no injustice is done to the plaintiff, in error.
George May was the person to whom the original letter was addressed and he retained a copy of it for the use of Lee, ai d seems never to have n Iusen the use of it, and appears to have had no interest in the transaction, and there is no apology for making him deiendant.
Lee is the remaining defendant, with whom the complainant below dealt, and of whom he bought the writing in question. Whether the complainant is entitled to any relief against him, we have not thought it necessary to decide For as he is a non resident the jurisdiction of the court below, as to him, couid not be sustained except by joining him properly with other defendants, who weie par-lies or privies to the same transaction. As the other defendants residing here were improperly made, ot the plaintiff in error has shewn no claim for relief against them, Lee cannot be compelled to answer and defend the suit, barely because the plaintiff in error has improperly called before the court others with him over whom the court has jurisdiction, but against whom he has no claim, as was decided by this court in the case Curts vs Hill, &c. 3 Bibb, 465.
On rendering this opinion, Mr. Liitel presented the following petition :
*438 *Po the honorable the judges of the court of appeals, for commonwealth of Kentucky, the petition of William Ltit? 11, the attorney of Henry Banks, humbly sheweth :
That in the decision of the writ of error, in the case of Banks vs May’s heirs, there is, in his humble opinion, error in the following particulars :
First, in that the court have decided that a suit in chancery could not have been maintained by Lee himself on tt'e contract allud«d to in the letter ; and secondly, in inferring from that postulation, that no bill could be maintained by the complainant.
On the first point yeur petitioner will premise that he does not assume the position that a bill in chancery would lie to enforce a gift, merely voluntary and gratuitous, nor bas he ever understood this bill in that light.
The only reason for considering the promise merely gratuitous, which your petitioner bas understood the court to assign, or can conceive to exist, is on the supposition that the word “ present,” ex vi termini, implies a lack of all consideration, valuable or good. The word “ present” is not a technical term, consequently, the meaning of it most he ascertained from approved authorities in language. Ainsworth renders it donum, mtftius. He renders donum, gift, reward ; and jmn ws, he renders a gift, reward, retribution. 'I bis is sufficient to shew that the word u present” does not necessarily exclude the idea of a valuable cons deration for live thing presented. Your petitioner admits that it may exclude it. but he understands the decision of the court as predicated on the opinion that the word presen!” does and must necessarily exclude the idea of a valuable consideration in ail cases whatever.
Taking the case tlien merely on the import of the word Apresen;,” it assumes the following attitude.
The letter is the language of the stipulator only. He bas used a term which may mean a gratuity, or may mean a reward or retribution for services rendered, or money or property received; consequently, the case comes at once within the letter and spirit of that rule of the civil law— h sUpulationibus cum queritur quid actum sit, verba contra stipulatorem interpretando sunti as well as within a rule of the common law of similar import, and too well known to be repeated.
But the case docs not depend on the real import of.the word “ present” taken in all the nakedness of metaphori- *439 ⅝⅛1 abstraction. The letter itself manifests that there were extensive dealings, not of the gratuitous character,between the parties, and that some consideration, con* oected with, or resulting from, contracts relating to land, was the quid pro quo for this “ present.”
It is not believed that the court intend to overrule ther recent decision in the case of Bell’s heirs vs. Breckenridge’s heirs. Mar. 563 And if that decision remaius unimpeach-ed, the statute against frauds and perjuries cannot be applied to this case. If in that case the court would not pre* sume that the contract was made after the first day of January, 1187, because the date of the contract did not appear, they cannot in this case, where the date is wholly uncertain. All questions then as to the sufficiency of the letter to prove the whole of the contract for the sale of the land, and whether that deficiency may be supplied by testimony aliunde, seem to be silenced.
This letter is not offered as the written contract made between Lee and May, nor does it purport to be so, but. merely as a particle of evidence that such contract had been previously made. The contract is stated as a substantive fact in the bill, and tiiis as an item of evidence eon-' ducing io prove that fact, and certainly the insufficiency of that item of evidence must be unavailing on a demurrer questioning the validity of the contract it self.
Prior to the passage of the statute of frauds, no contract in writing was necessary, consequently, a contract stated generally, on a valid consideration, would have been sufficient, and the introduction of the. letter into the bill vas mere surplusage which could not vitiate the statement respecting the contract itself, of course, the question does not occur whether in contracts for the sale oflands before the statute of frauds, or wbat amounts to the same thing, in contracts for the sale of personal property, at this time the proof may be partly oral in aid of a written contract. ! he letter is introduced merely as evidence, that a contract, prior to that time, had been made; as an evidence of the admission of it by May, and tha< by such admission and promise to comply with it, he induced Banks to purchase the land from Lee.
Taking for granted that the contract between May and Lee was on a valuable consideration and every way valid, May could no!, merely by'calling it a present, at any indefinite period afterwards, render it void and discharge' *440 himself from his obligation to Lee to comply with it, and 'l's tltlerlj inconceivable how Banks cao on any roora! or rational principle stand in a worse situation than Lee.
If May had asserted m his letter that Lee had won the land from him at gaming, or otherwise defrauded him of it, if, in short, his letters had not only denied the existence of any valuable or good consideration, but had averred the existence of every one vile and void, Lee would not have been precluded from filing his bill stating the contract as it was, proving a consideration valid- in law, and recovering according to the nature and ex'ent of his proof.
If the letter of May was liable to demurrer it ought to have been a demurrer to evidence, not to the bill ; here Was a demurrer to the bill, and tile only cause of demurrer appears to be an exception to part of the evidence brought in support of that bill and on this account the bill itself is dismissed.
Admitting that the bill was inartificial!v drawn, a dis-mission without prejudice was the proper course
The court are requested to acknowledge (lie possibility, that prior to the first day of January, 1187, there- was a Valid contract between May and Lee for the conveyance of such a tract of land, that the contract was for a valuable consideration, that Lee could nave enforced it in equity, and that iu relation to that contract he wrote this letter, and that Banks was the bona fide assignee of Lee Yet, by lite absolute dismission of this bill, lie is denied all relief.
Bat, secondly, it is believed to be immaterial, in this case, whether the consideration, passing from Lee to May, tvas either good or valuable, or whetber there was in fact any consideration.
May gave a written promise to convey the land to whomsoever Lee should sell it, Lee did sell it to Backs, and Banks paid the consideration ; therefore, as between Banks and May there was a consideration fully paid, and if May, by his voluntary act, knowingly, caused Banks to pay that consideration, it is believed that no principle of law or equity .vil! permit anv allegation of want of consideration afterwards. Whether May received it or not is immaterial ; he was the occasion of its being paid to Lee, and paving it to Lee was just as expensive to Bioks as paying it to May would have been
Tkc letter of May must be considered as stronger eri* *441 «fence of hi» perfect satisfaction with the contract with Lee, and his undissembled intention to comply with it. than it would have been if directed to Banks himself, because it evidently put it in Lee’s power to sell the land to the nearest friend that May had on earth ; this Banks must have known, and therefore could not have entertained a suspicion that there was any cause why May should refuse to comply with it — Banks might have been indifferent to him — might have been his enemy — but it is altogether incredible that there were no men on earth for whom he felt regard enough to refrain from doing what must necessarily have put it in the power of Henry Lee, to have defrauded them to such an amount, without the possibility of redress, which would have been the case if he did not intend to perform bis promise.
Your petitioner does not feel it incumbent on him to ask any thing more, in behalf of his client in this case, than the courts of Virginia and of Kentucky have uniformly granted to the innocent assignees of gaming contracts, altho’ he feels that there is a difference between contracts to which no principle of turpitude can be imputed, which violate no municipal or moral law, and contracts stamped with the reprobation of society, and which reuder the contracting parties infamous.
As early as the year 1793, in the case of Hammond vs. M’Cullom, this court laid down these principles — “ Wtiea * the obligor in a bond, encourages the purchase of it by “ an assignee, and promises to pay it, if there is no fraud “ practised, by the assignee, in obtaining such assignment, “ the obligor shall be precluded from setting up against the “ assignee any equity which he may have against the obli-gee.” This was a decision made on principle, for it was not ouly prior to the publication of the cases of Buckner vs. Smith, 1 Wash. 299, and Hoomes vs. Smack, 1 Wash. 389, but before those cases weie decided. However, those cases recognize and affirm the same principle, and apply it to gaming bonds, which are absolutely void.
The case of Short vs. Jackson & Young, in this court, is an additions] authority and a case more in point, printed decisions, p. 224. There the court lay it down as a general principle, that an assumpsit to an assignee will operate as a release of equity. In that case, Short had promised his obligee that be would pay the bonds to any merchant Who “oipd take tfce*u — he wrote to Jackson and Young to *442 the same import — Jackson and Young bought them and assigned one of theiñ to Berry, to whom Short never wrote, never made any promise. The court decided that the promise made to the obligee, and the letter written te Jackson §• Young, were available to Bár the equity That is, if Jackson and Young were informed that Short had made an unconditional promise, to his obligee^ to pay to any merchant to whom he should assign them, that his equity was barrtd, as against them, and that his writing to them to that effect barred his equity against Berry, their as-signee.
The case of Morrison vs Clay has, justly, been considered a leading case, in this country, on this Subject. Ia that case the court explain the principles and shew that,, in transactions of this kind, it is immaterial whether the original consideration Was valid of void, and that the actual consideration is what the assignee Was induced to part with by the fraud or folly of the original obligor.
If John May had advertised that he would convey this land to any person who would pay Lee $5» 00, or to any person who would produce Lee’s receipt for that sum, it is not conceivable on what principle he could object to the person whom he bad induced to advance such a sum of money, that he did not owe it to Lee, or if he did that Lee cot.Id not have compt lied him to pay it. Yet the defence off ted in this case is substantially the same and not more meritorious. Tie circumstance of his declaration not having been published in the newspapers cannot change the principle The fetter shews that it never was contemplated that the conveyance should be made to Lee personally, and was, in effect, an address to all persons to whom Lee should offer the land for sale — was intended for his benefit —to be put into his possession — to give him credit with the world to that amount. It ivas put into his possession, he might have published it if he pleased- — it did give him credit to the foil extent which be and May wished it to do, for it enabled him to sell the land to Banks ; he did sell it, received pay, and delivered over this letter to Banks as evidence of hishight.
Your petitioner has no reason to believe, nor does he beimve, that May, at the time lie wrote this letter, did not intend to comply with it. or did not intend to subject himself to an action at the suit of the purchaser for non com • phance. If it shall be said that every man would knotty *443 that a free gift could not be enforced, and therefore no in-jiií'i ouuhl be dime, the answer is, that fevr men know this even at this time, and it is believed that íewtr stiii knew it then.
Little, for appellant, Bibb, for appellee.
But May did not intend that this should be considered as a mere gratuity, as is manifest from his using an equivocal word, and from his referring to the extensive dealings between him and Lee, aDd least of all did be intend that it should appear to those to whom Lee should offer the land for sale that the laud could not be recovered from him. If lie had merely stated (bat it was a gift to Lee, a- selhug gifts is thought disrespectful (o the giver, some cautious man might have doubted whether, if Lee should sell it, May would confirm the sale. He removes this difficulty, he says it may be sold ; he goes further, and shews that it is certainly to be sold, that it is never to vest ¡o Lee, himself; it is to make no part of the peculium formed by the kindness of bis friends, but is to pass imtnediatdy té his stuck in trade, to form a part of it, and to be sold to the best advantage. If May was sincere, in the whole, of this proceeding, he was evidently bound by contract to convey to the purchaser If he was insincere, if he ured the language, which be has, for the purpose of enabling Leé to defraud a purchaser, he ought to be compelled, on ac* count of the fraud, to realize the expectations be had raised All which is respectfully suhmh'ed and a rehearing prayed. VV.V1. LI «TELL.
But the court, on consideration, overruled the petition and ordered the opinion to stand unaltered.